CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

AUG 2 4 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT M. KING, | ) | |
| Plaintiff, | ) | Civil Action No. 7:06cv00490 |
| | ) | |
| v. | ) | |
| | ) | By:  Hon. Michael F. Urbanski |
| | ) | United States Magistrate Judge |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Robert M. King ("King") brought this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). By standing order, this case has been referred to the undersigned for Report and Recommendation, and is before the court on cross motions for summary judgment. As neither party has requested the opportunity to argue its respective motion and as the undersigned finds the facts and legal contentions are adequately presented in the materials before the court, the undersigned dispenses with oral argument.

The undersigned finds that the Administrative Law Judge ("ALJ") erred in failing to properly evaluate information presented at the administrative hearing as to whether the jobs identified by the Vocational Expert ("VE") actually existed in significant numbers in the regional economy. The VE identified four specific jobs detailed in the Dictionary of Occupations Titles ("DOT"), but in determining whether these jobs existed in significant numbers in the national and regional economy, the VE utilized a census compilation which included several other job titles in addition to those she had identified. At the hearing, King raised an issue as to whether

the census compilation, which admittedly included numerous other jobs than those identified by the VE, accurately reflected the actual number of specific jobs identified by the VE available in the national and local economy for a person having his functional limitations. At the conclusion of the administrative hearing, the ALJ left the record open to allow the VE to submit evidence of such availability and indicated he would consider it, but there is no indication in the record this information was submitted and there is no analysis in the ALJ's opinion on this issue. Accordingly, as it is plain that the administrative record is not complete on this issue, the undersigned cannot find there is substantial evidence to support the ALJ's determination that jobs exist in significant numbers in the national and regional economy for a person with King's limitations. Therefore, it is **RECOMMENDED** that the Commissioner's decision be reversed and remanded for further development of the record on this issue.

## I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

2

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB and SSI claims. 20 C.F.R. §§ 404.1520 (2006); see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C.A. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

The issue on appeal in this case is a relatively narrow one and concerns the sufficiency of the Commissioner's evidence at step five of the sequential evaluation process. At this step, the Commissioner bears the burden of providing evidence that the claimant can engage in a job that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1), (2) (providing that the Commissioner bears the burden at step five); Wilson v. Heckler, 743 F.2d 218, 220 (4th Cir.1984). Generally, the ALJ obtains such evidence through a VE, who, based on the claimant's age, education, work experience, and RFC, testifies as to whether there are jobs for such a person in the national and regional economy. See 20 C.F.R. § 404.1520(g)(1).

At the administrative hearing, the ALJ called a VE to testify regarding the availability of jobs for a hypothetical person having the functional characteristics of the claimant. (Administrative Record [hereinafter R.] at 414-31) The VE testified that given the hypothetical person's functional limitations, a number of jobs existed in the national and regional (Virginia) economy which this person could perform. These jobs included an office helper, laundry aide, order clerk, and telephone clerk, and the VE provided numbers of these jobs in the national and regional economy. (R. 415-19)

On cross-examination by counsel for King, the VE explained that these numbers were obtained through a program called Skilltrain, which uses national statistical data from the United States National Occupational Employment Survey ("OES"). According to the VE's testimony, the Skilltrain program takes this national OES information and correlates it to census data for the region to derive the number of jobs available in the region. (R. 419-20)

Upon further questioning, the VE conceded that the numbers of jobs she identified do not correlate directly to any specific job title under the Dictionary of Occupational Titles ("DOT"), but rather reflect an estimate of the number of jobs for a group of similar DOT titles. For example, the number of jobs quoted by Skilltrain for the office helper job includes six other DOT titles, and the number of jobs quoted for telephone clerk was based on a composite of fourteen DOT titles. The VE testified that each of these different DOT titles grouped together in the OES and utilized by Skilltrain were similar, but could have different SVP levels[1] and skill levels. As the VE testified, "[t]hey do not differentiate and break them apart." (R. 419-25)

---

[1]The SVP rating for each job is used to determine the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the skills needed for average performance in a specific job-worker situation. Dictionary of Occupational Titles app. C (4th ed. 1991).

4

Case 7:06-cv-00490-SGW-mfu   Document 20   Filed 08/24/07   Page 4 of 8   Pageid#: 81

Based on this testimony, counsel for the claimant argued at the administrative hearing that because the numbers used by Skilltrain are a composite, they may not reflect the actual numbers of jobs in Virginia which could be performed by a person falling within the parameters of the hypothetical, as the collection of DOT titles may have different skill and exertional levels than stated in the hypothetical. (R. 425-26)

The ALJ then asked the VE if there was any data that existed that was more precisely focused on a specific DOT title, and could provide, for example, the number of jobs in Virginia for unskilled, sedentary telephone clerks, which more accurately reflected the characteristics set forth in the hypothetical. (R. 425-26) The VE responded that such data existed for periods prior to 2005, but she did not have that data with her at the hearing. The ALJ then asked the VE to provide that data for the four jobs she identified, stating on the record that "I'd like to see how those numbers match up with these numbers so I know whether there's a really substantial difference." (R. 427) The ALJ continued that "I think Counsel has pointed out an interesting question here, this is the first I've become aware of this," (R. 428), and left the record open for the VE to provide this information and to allow the claimant to comment on it. (R. 429) At the close of the hearing, the ALJ stated that "[a]ll right, Mr. King, I'm not going to make a decision on your claim today because we're waiting for some additional material. I'll make a decision just as soon as I get everything together. If, however, if you request a further supplemental hearing, and when you do that or, or exchange some materials, we'll do that as well." (R. 431)

There is no reflection in the record that this additional information was ever obtained, much less evaluated. The record contains no mention of such information. Nor does the ALJ's decision make any reference to keeping the record open to receive this further statistical data and to allow the claimant to comment on it. Rather, the step five analysis in the ALJ's decision

5

rendered three months later is both rote and cursory and merely parrots the numbers referenced by the VE at the hearing without any hint, much less analysis, of the issue raised at the hearing concerning the validity of these job estimates.[2]

While it may be the case that King's argument as to the validity of these statistics amounts to naught, the undersigned cannot determine on this record whether the Commissioner's decision is supported by substantial evidence. At the time of the hearing, the ALJ stated that he could not make a decision because he needed "additional material," (R. 430-31), yet made the decision without the benefit of the same.

In determining if there is substantial evidence to support the ALJ's findings, the court must consider whether the ALJ analyzed all of the relevant evidence and sufficiently explained his findings and his rationale for crediting or discrediting certain evidence. See Sterling v. Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997). Moreover, Social Security Ruling ("SSR") 00-4p requires the ALJ to resolve any possible conflicts between the evidence presented by the VE and information in the DOT and/or in any of its companion publications regarding work in the national economy. "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).

---

[2]In connection with the analysis under step four, concerning whether King could perform his past relevant work, the ALJ stated that "[t]he undersigned has considered as to whether or not there is consistency between the vocational expert's testimony regarding the jobs discussed and the Dictionary of Occupational Titles and there was no indication of any significant discrepancies (SSR00-5p)." (R. 27) This conclusory statement, of course, begs the question raised by King at the administrative hearing and reaches a result adverse to King without benefit of the additional information the ALJ said he needed and, significantly, any analysis of this issue whatsoever. In short, the ALJ stated that he would keep the record open to consider this additional information and the argument raised by King, but did not do so. As a result, this case needs to be remanded for further factual development at step five and sufficient consideration by the Commissioner of the validity and adequacy of the evidence presented by the VE at step five.

Case 7:06-cv-00490-SGW-mfu   Document 20   Filed 08/24/07   Page 6 of 8   Pageid#: 83

Here, the ALJ clearly failed to fulfill either of these requirements. Despite noting during the administrative hearing that before making a decision he need specific additional information as to the availability of the identified jobs in the local economy, and holding the record open for the same, the ALJ failed to wait for this information before issuing a decision. Moreover, the ALJ did not address these concerns in the written opinion, despite his stated interest in addressing the "interesting question," (R. 428), as to the reliability of the information provided by the VE during the administrative hearing.

As with the ALJ's decision, the Commissioner's brief on appeal skirts this issue, suggesting instead that the ALJ can take administrative notice of reliable job information, citing 20 C.F.R. § 404.1566(d). Section 404.1566(d) allows the ALJ to take administrative notice as to the availability of jobs in the national and local economy as detailed in various governmental publications. 20 C.F.R. § 404.1566(d) However, there is no evidence that the ALJ in fact took notice of the availability of such jobs through any such publication. Rather, the written opinion clearly identifies the source of the ALJ's information as to the availability of jobs in the national and regional economy – the VE's testimony. (R. 28) Furthermore, the mere fact that a regulation allows the Commissioner to take administrative notice of job data from various governmental publications does not in any respect resolve the issue on which the ALJ requested additional information, and which continues to remain unresolved, that being whether the job information presented by the VE was statistically reliable in the first instance. The ALJ requested additional information from the VE and kept the record open to consider whether the VE's data was statistically reliable, but simply failed to follow up on that information and follow through with that analysis.

Case 7:06-cv-00490-SGW-mfu   Document 20   Filed 08/24/07   Page 7 of 8   Pageid#: 84

Under these peculiar circumstances, the undersigned is constrained to **RECOMMEND** that this case be reversed with instructions to be remanded for a complete vocational assessment at step five, including consideration of the evidence the ALJ requested, but apparently never received or considered.

## III.

The Clerk is directed immediately to transmit the record in this case to the Hon. Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 24 day of August, 2007

Hon. Michael F. Urbanski
United States Magistrate Judge

8